Paul H. Schafhauser, Esq.
John M. August, Esq.
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, NJ 07102
Tel 973.274.2000
Fax 973.274.2500
Attorneys for Parallel Construction, Ltd.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| PARALLEL CONSTRUCTION, LTD., | Case No. 10-12401 (DHS) |
| Debtor. | |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE
BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN OF
REORGANIZATION PROPOSED BY DEBTOR PARALLEL CONSTRUCTION, LTD.**

PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.

Dated:  September 6, 2010          Proponent    Parallel Construction, Ltd.

                                                     By:          /s/ Adlai Souirgi
                                                               Adlai Souirgi

                                                               Vice President
                                                               Title

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN (AS SUCH TERM IS DEFINED BELOW).

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW.  THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN (WHICH IS INCLUDED AS EXHIBIT "A" TO THIS DISCLOSURE STATEMENT).  IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS

PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# TABLE OF CONTENTS

Page

**I.** INTRODUCTION ............................................................................................1
    **A.**   Purpose of This Document.........................................................2
    **B.**   Confirmation Procedures ...........................................................3
    **C.**   Disclaimer ................................................................................6

**II.** BACKGROUND ...........................................................................................7
    **A.**   Description and History of the Debtor's Business.....................7
    **B.**   Principals/Affiliates of Debtor's Business................................7
    **C.**   Management of the Debtor Before and During the Bankruptcy..................8
    **D.**   Events Leading to Chapter 11 Filing ........................................8
    **E.**   Significant Events During the Bankruptcy ...............................8

**III.** SUMMARY OF THE PLAN OF REORGANIZATION .............................12
    **A.**   General....................................................................................12
    **B.**   Plan Overview.........................................................................12
    **C.**   What Creditors and Interest Holders Will Receive Under the
        Proposed Plan.........................................................................13
    **D.**   Unclassified Claims ................................................................13
    **E.**   Classified Claims and Interests ...............................................16
    **F.**   Means of Effectuating the Plan................................................19
    **G.**   Other Provisions of the Plan ...................................................21
    **H.**   Conditions Precedent to Effective Date ...................................22

**IV.** Confirmation Requirements And Procedures ...............................................23
    **A.**   Who May Vote or Object.........................................................23
    **B.**   Best Interests of Holders of Claims and Interests/Liquidation
        Analysis...................................................................................27
    **C.**   Financial Feasibility................................................................28

**V.** CERTAIN RISK FACTORS TO BE CONSIDERED .................................30
    **A.**   Certain Bankruptcy Law Considerations.................................30
    **B.**   Additional Factors to be Considered........................................31

**VI.** CERTAIN FEDERAL INCOME TAX CONSEQUENCES AND NEW
COMMON STOCK DISCUSSION ..............................................................33
    **A.**   Taxes.......................................................................................33
    **B.**   New Common Stock ...............................................................36

**VII.** EFFECT OF CONFIRMATION OF PLAN.................................................36
    **A.**   Discharge ................................................................................36
    **B.**   Exculpation .............................................................................37
    **C.**   Vesting of Property in the Debtor ............................................37

HF 5900199v.6 #14622/0001

**D.**    Modification of Plan ...................................................................37
**E.**    Post-Confirmation Conversion/Dismissal ................................38
**F.**    Post Confirmation Fees...........................................................38

**VIII.** ALTERNATIVES TO REORGANIZATION PLAN...........................................38

**IX.** CONCLUSION .............................................................................39

HF 5900199v.6 #14622/0001

# I.

## INTRODUCTION

Parallel Construction, Ltd. ("Parallel" or the "Debtor") is the debtor in this Chapter 11 bankruptcy case (the "Chapter 11 Case"). On January 28, 2010 Parallel commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §101, et seq. Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan provides for the Debtor to reorganize its business affairs and to continue to operate its business with a reduction of debt and with greater liquidity pursuant to a reorganized equity structure. Parallel is the party proposing the Plan which is sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT "A".

This is a reorganizing plan. In other words, the Proponent seeks to continue its business as a going concern and to accomplish payments proposed under the consensual Plan through the proceeds of a loan upon confirmation of the Plan in an approximate amount of $480,000 to be provided by a lending institution to be selected by Parallel and through the issuance of 175 shares of New Common Stock in Reorganized Parallel. Allowed Administrative Expense Claims, Priority Tax Claims and Non-Tax Priority Tax Claims (each as defined below) will be paid in full, unless otherwise agreed to by the holders of such Claims. Parallel is currently involved with discussions with numerous proposed lenders and anticipates receiving a loan commitment within the next thirty (30) days and anticipates the loan closing before the end of 2010.

1

**A.      Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and provides you with certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy Code to all the known creditors of the Debtor.  The purposes of this Disclosure Statement is to provide sufficient information to enable creditors who are entitled to vote to make an informed decision on whether to accept or reject the Plan.  This Disclosure Statement describes, among other things:

<u>**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**</u>:

(1)    **WHO CAN VOTE OR OBJECT,**

(2)    **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

(3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)    **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

(5)    **THE EFFECT OF CONFIRMATION, AND**

(6)    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

2

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Bankruptcy Code section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.**  **Confirmation Procedures**

**Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All shareholders of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not

HF 5900199v.6 #14622/0001

constitute a proof of claim.  If you are uncertain whether your claim has been correctly

scheduled, you should check the Debtor's Schedules, which are on file at the office of the

Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, District of

New Jersey, U.S. Court House, Martin Luther King, Jr. Federal Building, 50 Walnut

Street, Newark, NJ 07102. The Clerk of the Bankruptcy Court will not provide this

information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN

THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE

PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT

LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE

DEBTOR AND ON ALL CREDITORS AND EQUITY INTEREST HOLDERS IN

THIS CHAPTER 11 CASE.

The date of entry of an order approving this Disclosure Statement is fixed

as the "Voting Record Date". Only Persons who hold Claims, other than any other parties

specified by the Court, are entitled to receive a copy of this Disclosure Statement and all

of the related materials.

In order to conserve cost and expenses, the Debtor's bankruptcy counsel

has agreed to serve as the balloting agent (the "Balloting Agent") for the purpose of

receiving ballots to accept or reject the Plan and to calculate and report on voting results.

Please complete and sign your ballot and return it in the enclosed pre-addressed envelope

to (the "Balloting Agent"):

HF 5900199v.6 #14622/0001

HERRICK, FEINSTEIN LLP
Attn: John M. August, Esq.
1 Gateway Center
Newark, NJ 07102
Telephone: (973) 274-2000

ALL PROPERLY COMPLETED BALLOTS RECEIVED BY THE BALLOTING AGENT PRIOR **TO** [                    ] **AT 5:00 p.m. (EDT)** (THE "VOTING DEADLINE" OR "BALLOTING DEADLINE") WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER THE VOTING CLASS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN HAS ACCEPTED THE PLAN. <u>ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. SEE ARTICLE IV OF THIS DISCLOSURE STATEMENT FOR FURTHER INFORMATION REGARDING CONFIRMATION AND VOTING ISSUES.</u>

**Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired under such plan vote to accept such plan, unless the "cram down" provisions of the Bankruptcy Code are employed.**

### 1.    Time and Place of the Confirmation Hearing

The hearing at which the Court will determine whether to confirm the Plan will take place on [                ] , at [{A.M./P.M.}], United States Bankruptcy Court, District of New Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, NJ 07102, Courtroom 3B.

5

### 2.    Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Herrick Feinstein LLP, One Gateway Center, Newark, NJ 07102, Attn: John M. August, Esq.

Your ballot must be received by [           ] or it will not be counted.

### 3.    Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon (1) Herrick, Feinstein, LLP, Counsel for the Debtor, One Gateway Center, Newark, NJ 07102, (Attn: John M. August, Esq.) and (2) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102 (Attn: Donald MacMaster, Esq.) by [           ].

### 4.    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Counsel to the Debtor, (Attn: John M. August, Esq., Herrick, Feinstein LLP, One Gateway Center, Newark, NJ 07102, telephone: (973) 274-2000, email: jaugust@herrick.com.

### C.    Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's books and records and financial projections, and through consultation with the Debtor's Management. The information contained in this Disclosure Statement is provided by the Debtor's Management and its internal staff. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

HF 5900199v.6 #14622/0001

PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.

## II.

## BACKGROUND

**A.      Description and History of the Debtor's Business**

Parallel was formed in 1987 and is incorporated in New York state. The Debtor is the owner of real property located at 96 Duncan Avenue, Jersey City, New Jersey, identified as Block 1827, Lot 96, on the Tax Map of Jersey City, County of Hudson, and State of New Jersey (the "Property"). The Property was purchased in 1987.  Parallel operates the Property as a residential apartment building and derives its income through the leasing of apartment units located on the Property.

The Property consists of a five story apartment building.  The building was built in limestone and brick and contains nine (9) identical apartments.  Each apartment consists of 3 bedrooms, living room, dining room, kitchen, and one bath, totaling approximately 1320 sq. ft.  The back of the Property contains an oversized garden that can potentially be developed.  The Debtor estimates that the approximate value of the apartment building in today's market, would be $1,400,000.00.  As of September 2010, the monthly income of the building is $8,500.00 per month and should increase progressively as leases are renewed.

**B.      Principals/Affiliates of Debtor's Business**

The Debtor's current principals are:

| NAME AND ADDRESS | TITLE | CURRENT COMPENSATION |
|---|---|---|
| Adlai Souirgi | Vice President | 30% stock of Debtor |
| Hamid Souirgi | President | 50% stock of Debtor |

HF 5900199v.6 #14622/0001

Frances Plonka                Secretary                20% stock of Debtor

## C.    Management of the Debtor Before and During the Bankruptcy

The Debtor's Management prior to the Petition Date and subsequent to the Petition Date is comprised of:

| NAME | TITLE |
| --- | --- |
| Adlai Souirgi | Vice President |
| Hamid Souirgi | President |
| Frances Plonka | Secretary |
| Betty Gill | Building Manager - responsible for maintenance, repairs and improvements to the Property. |

## D.    Events Leading to Chapter 11 Filing

The Debtor filed its bankruptcy case in response to decreased revenue in connection with the economic downturn as well as the Debtor's desire to restructure its debt structure and ownership interests. In addition, the Debtor was faced with the threat of the prosecution of foreclosure proceedings (the "Foreclosure Proceedings") by S2, LLC ("S2"). S2 is the owner of a certain tax lien certificate which was purchased in connection with taxes owed by the Debtor to Jersey City, New Jersey for the tax years of 2002 through the fourth quarter of 2009 (the "S2 Tax Lien Certificate"). The filing of the bankruptcy petition afforded the Debtor an opportunity to reorganize its business affairs and restore the business to profitability and stayed the Foreclosure Proceedings.

## E.    Significant Events During the Bankruptcy

### 1.    Bankruptcy Proceedings.

The following is a chronological list of significant events which have occurred during the Chapter 11 Case subsequent to the Petition Date:

(a)    On January 29, 2010 the Debtor filed its Schedules of Assets and Liabilities, and Statement of Financial Affairs (the "Statement & Schedules").

8

(b)     In accordance with Bankruptcy Rule 3003(c)(3), on January 29, 2010, the Court, by notice to all creditors, established May 25, 2010, as the deadline, sometimes referred to as a "Bar Date", for filing proofs of claim against the Debtor for debts incurred prior to the Petition Date. Pursuant to 11 U.S.C. § 507(b)(9), governmental units were given 180 days from the date of the order for relief (*i.e.* until July 26, 2010) to file a proof of claim.

(c)     Thereafter, on February 24, 2010, the U.S. Trustee conducted the meeting of the Debtor's creditors under section 341 of the Bankruptcy Code.

(d)     On March 1, 2010, the Court authorized the retention of Herrick, Feinstein LLP ("Herrick") as bankruptcy counsel to the Debtor, nunc pro tunc to the Petition Date (*Docket No. 19*). No official committee of unsecured creditors or examiner or trustee has been appointed by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee").

(e)     The vast majority of the Debtor's resources since the Petition Date were directed towards negotiating terms with each of its known creditors regarding treatment under a consensual plan of reorganization and which are reflected in this Disclosure Statement. The Debtor was progressing with its efforts and was near completion when, on July 21, 2010 creditor S2 filed its Motion for Relief From Stay, which is currently pending before this Court (*Docket No. 33*) (the "S2 Motion").

(f)     Subsequent to the filing of the S2 Motion, the Debtor redeemed a certain tax sale certificate sold by Jersey City, New Jersey to Tower Lien, LLC in connection with first and second quarter real estate property taxes for year 2010. That tax sale certificate was referenced in the Supplemental Certificate of Counsel in Support of Motion for Relief from Stay, filed by S2. (*Docket No. 35*). A copy of the lien redemption statement and proof of payment was filed with the Court as part of the Debtor's response to the S2 Motion. (*Docket No. 36*).

(g)     In conjunction with its reorganization efforts, the Debtor has also been involved with negotiations with various entities regarding exit financing and/or a loan to facilitate Parallel's emergence from Chapter 11.

(h)      Since the Petition Date, the Debtor's management team has been managing the renovation of the residential apartments located on the Property. These renovations, which have essentially been completed, have allowed the Debtor to increase both the occupancy rate at the Property and the cash flow from the Property, thus making the Property more attractive to potential lenders.

(i)      As the Debtor continued with negotiations its creditor sphere and financing sources, Parallel sought and received two extensions of its exclusive periods to file its plan of reorganization and solicit acceptances thereto. Pursuant to an Order dated July 20, 2010, *(Docket No. 32)* the Debtor's exclusive period to file its plan of reorganization was extended to September 15, 2010 and its exclusive period to solicit acceptance of its plan of reorganization was extended to December 15, 2010.

(j)      The Debtor has also remained current with its monthly operating reporting responsibilities, is current with its payment of quarterly U.S. Trustee fees and has attended all status conferences and hearings which have been scheduled before the Court.

(k)      Currently, the only matter pending before the Court, other than the adequacy of this Disclosure Statement, is the S2 Motion. The Debtor is optimistic that it will be able to resolve the S2 Motion through the consummation of the Plan and the resulting payment in full to S2 on account of its Claim.

### 2.    Other Legal Proceedings

The Debtor is not currently involved in any non-bankruptcy legal proceedings other than the S2 Foreclosure Action which was pending in the Superior Court of New Jersey on the Petition Date. That action is presently stayed.

### 3.    Procedures Implemented to Resolve Financial Problems

As set forth above, since the Petition Date, the Debtor, in an effort to remedy the problems that led to the bankruptcy filing, has been extensively involved in efforts to secure funds to enable it to emerge from Chapter 11. Further, the Debtor was heavily

involved with the negotiation and resolution of the Claims of each of its Creditors, as set forth herein. The Debtor also remained current with its administrative obligations and has remitted post Petition Date taxes.   Additionally, as set forth above, the Debtor's management has been involved with the renovation of the apartments located on the Property. These renovations, will significantly increase the value of the Property and will increase the cash flow from the Property, thus making the Property more attractive to potential lenders.   The loan proceeds sought by Parallel (the "Loan Proceeds") will be used to implement this Plan and for continued improvements to the Property including the replacement of certain windows, the replacement of the heating system on the Property and other repairs and improvements which may be necessary.

### 4.   Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor and its professionals reviewed the Debtor's pre-Petition Date transfers pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code ("Avoidance Actions").   The Debtor is unaware of any justifiable grounds to engage in the pursuit of Avoidance Actions and has determined not to commence any Avoidance Actions in light of that review.

### 5.   Current and Historical Financial Conditions

Parallel is current with its post petition obligations.   The Debtor's last operating report is annexed hereto as Exhibit "B".

HF 5900199v.6 #14622/0001

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

A.    **General**

**SET FORTH IN THIS SECTION IS A SUMMARY OF CERTAIN OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH CONFIRMATION OF THE PLAN. THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND CAREFUL READING OF THE PLAN, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT "A". STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS (OR THE VALUE OF SUCH DISTRIBUTIONS) ARE ESTIMATES BY THE DEBTOR BASED ON AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION AS TO THE ACCURACY OF THESE AMOUNTS. FOR AN EXPLANATION OF THE BASIS FOR, LIMITATIONS OF AND UNCERTAINTIES RELATING TO THESE CALCULATIONS, SEE SECTION VII ("CERTAIN RISK FACTORS TO BE CONSIDERED"), BELOW.**

B.    **Plan Overview**

A principal goal of a chapter 11 bankruptcy case is to reorganize or liquidate a debtor's business for the benefit of itself and its creditors and interest holders. The plan of reorganization or liquidation is the blueprint by which these goals are accomplished. It provides the rules and procedures pursuant to which a debtor's creditors (and interest holders, when possible), will be paid and lists the steps a debtor or its successors will take to either reorganize or wind up its business. The Plan describes the treatment afforded to

12

Unclassified Claims, Unimpaired Claims and the agreements achieved with each of the creditors in the Impaired Classes.

## C.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

The Plan classifies claims and interests in various classes.   The Plan states whether each class of claims or interests is impaired or unimpaired.   The Plan provides the treatment each Creditor in each class will receive.   Each of the Debtor's known creditors, with the exception of S2 whose claim will be satisfied in full and accordingly is not deemed to be Impaired, has conferred with the Debtor regarding the treatment of their compromised claims and each creditor has consented to such enumerated distributions for the purposes of effectuating this consensual Plan.

## D.    Unclassified Claims

Certain types of claims are not placed into voting classes.   They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.   As such, the Proponent has not placed the following claims in a class:

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 Case which are allowed under Bankruptcy Code section 507(a)(1), including all professional compensation requests pursuant to sections 330 and 331 of the Bankruptcy Code.   The Bankruptcy Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the U.S. Trustee which were incurred during the pendency of the Chapter 11 Case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

13

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan.

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Herrick, Feinstein LLP | $100,000 | Paid in full upon approval by the Court | Professional fees |

### Court Approval of Professional Compensation Required

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Bankruptcy Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Bankruptcy Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within sixty (60) days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the

14

HF 5900199v.6 #14622/0001

fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

As indicated above, the Debtor will need to pay approximately $100,000 worth of administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

## 2.    Priority Tax Claims

Priority tax claims ("Property Tax Claims") are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax. On, or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, each holder of an Allowed Priority Tax Claim shall be entitled to receive, in full settlement, satisfaction, release and discharge of and in exchange of such Allowed Priority Tax Claim, cash in an amount equal to the Allowed but unpaid portion of such Allowed Priority Tax Claim, as shall have been determined by the Debtor or such other less favorable treatment as to which the Debtor or Reorganized Parallel and such holder shall have agreed upon in writing. Pursuant to Bankruptcy Rule 3002(c)(1), all Priority Tax Claims must have been filed with the Bankruptcy Court on or before the date set forth in the Bar Date Order or no later than one-hundred and eighty (180) days after the Petition Date (*i.e.* July 26, 2010).

The following chart lists all of the Debtor's known section 507(a)(8) priority tax claims and their treatment under the Plan:

15

| Description | Amount Owed | Treatment |
|---|---|---|
| • New York State Department of Taxation and Finance | $25,000 (est.) | 100% cash payment upon Effective Date |
| • Internal Revenue Service | $200 (est.) | 100% cash payment upon Effective Date |

### 3.     Priority Non-Tax Claims

A priority non-tax claim ("Priority Non-Tax Claim") consists of any Claim of the kind specified in section 507 of the Bankruptcy Code.  These Unsecured Claims are given a statutory priority in right of payment.  On, or as soon as reasonably practicable after the later of (a) the Effective Date, (b) the date of any Distribution immediately following the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Priority Non-Tax Claim or (c) the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to and as specified by a court order, the holder of such Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, either (i) cash equal to the unpaid portion of the face amount of such Allowed Priority Non-Tax Claim or (ii) such other less favorable treatment as to which the Debtor or Reorganized Parallel and such holder shall have agreed upon in writing.

### E.     Classified Claims and Interests

### 1.     Classification of Claims and Interests

The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim or interest into a class with other claims or interests which are "substantially similar."

16

### a.    Class Categories

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which classes shall be mutually exclusive:

| CLASS | CLASS NAME | STATUS |
|-------|-----------|--------|
| Class 1 | Secured Claim of S2, LLC | Unimpaired/Deemed to Accept |
| Class 2 | Secured Claim of Aziz Laghzaoui | Impaired/Entitled to Vote |
| Class 3 | Secured Claim of Auditas, Inc. | Impaired/Entitled to Vote |
| Class 4 | Unsecured Claim of Betty Gill | Impaired/Entitled to Vote |
| Class 5 | Unsecured Claim of BW Financial Group LLC | Impaired/Entitled to Vote |
| Class 6 | Equity Interests | Impaired/Entitled to Vote |

### b.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following narrative lists all classes of creditors containing the holders of the Debtor's secured pre-petition claims and their treatment under this Plan:

**Class 1.**    Class 1 consists of the Secured Claim of S2 which was filed in the amount of $241,353.09. S2 is the owner of a certain tax sale certificate which was purchased in connection with taxes owed by the Debtor to Jersey City, New Jersey for the tax years of 2002 through the fourth quarter of 2009. The tax sale certificate has not been redeemed. For purposes of this Plan, the Class 1 S2 Claim is deemed Allowed. The Class 1 S2 Claim will be satisfied in full cash payment upon the Effective Date and the tax sale certificate shall be deemed to have been redeemed.

(1)    The Allowed Class 1 S2 Claim is unimpaired.

**Class 2.**    Class 2 consists of the Secured Claim of Aziz Laghzaoui ("Laghzaoui") which was filed in the amount of $2,623,198 and which was scheduled by the Debtor in the amount of $425,000. Laghzaoui holds a note and mortgage on the Property, dated August 4, 1989 in the sum of $375,000. The note and mortgage are unpaid. For purposes of this Plan, the Class 2 Laghzaoui Claim is deemed Allowed in the amount

of $425,000. Pursuant to an agreement with Laghzaoui, the Class 2 Laghzaoui Claim will be satisfied upon the Effective Date through (1) a cash payment to Laghzaoui in the sum of $100,000; (2) the tender to Laghzaoui of 50 shares of New Common Stock in Reorganized Parallel and (3) a cash payment to Laghzaoui in the sum of $100,000 if the Property is sold or converted to a condominium status.  Upon the Effective Date, Laghzaoui shall deliver to Parallel a certificate of affidavit in satisfaction of mortgage thereby cancelling the note and mortgage.

(1)    The Allowed Class 2 Laghzaoui Claim is Impaired.

**Class 3.**    Class 3 consists of the Secured Claim of Auditas, Inc. ("Auditas") which was scheduled by the Debtor in the amount of $175,000. Auditas is the holder of a mortgage on the Property, dated October, 2006 in the amount of $175,000. The mortgage is unpaid. For purposes of this Plan, the Class 3 Auditas Claim is deemed Allowed. Pursuant to an agreement with Auditas, the Class 3 Auditas claim will be satisfied upon the Effective Date through the tender to Auditas of 31 shares of New Common Stock in Reorganized Parallel. Upon the Effective Date, the mortgage shall be deemed cancelled.

(1)    The Allowed Class 3 Auditas Claim is impaired.

### c.    Classes of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Bankruptcy Code section 507(a).  There are two Classes of General Unsecured Claims. Class 4 is comprised of the unsecured claim of Betty Gill.  Class 5 is comprised of the unsecured claim of BW Financial Group LLC.  Both Ms. Gill and BW have entered into agreements with the Debtor concerning the consensual treatment of their claims for purposes of this Plan.  The following narrative identifies this Plan's treatment of Class 4 and 5 which comprise the Debtor's general unsecured claims:

**Class 4.**    <u>Allowed Unsecured Claim of Betty Gill</u>

Class 4 consists of the Unsecured Claim of Betty Gill ("Gill") which was scheduled by the Debtor in the amount of $164,000. Ms. Gill is owed monies from the Debtor in connection with money loaned to the Debtor and certain services rendered and certain labor performed by Ms. Gill. For purposes of this Plan, the Class 4 Gill Claim is deemed Allowed. Pursuant to an agreement with Gill, the Class 4 Gill Claim will be satisfied upon the Effective Date through (1) a cash payment to Gill in the sum of $25,000 and (2) the tender to Gill of 19 shares of New Common Stock in Reorganized

HF 5900199v.6 #14622/0001

Parallel.

(1)    The Allowed Class 4 Gill claim is impaired.

**Class 5.**    Allowed Unsecured Claim of BW Financial Group LLC

Class 5 consists of the Unsecured Claim of BW Financial Group LLC ("BW") which was scheduled by the Debtor in the amount of $188,600. BW is the holder of a note in the amount of $188,600, issued to BW in connection with a loan from 2005 to pay certain taxes on the Property. The loan is unpaid. For purposes of this Plan, the Class 5 BW Claim is deemed Allowed. Pursuant to an agreement with BW, the Class 5 BW Claim will be satisfied upon the Effective Date through the tender to BW of 35 shares of New Common Stock in Reorganized Parallel. Upon the Effective Date, the BW note shall be deemed cancelled.

(1)    The Allowed Class 5 Claim is impaired.

### d.    Class of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. Entities holding preferred or common stock in the Debtor are interest holders.  The following narrative identifies the Plan's treatment of the class of interest holders:

**Class 6.**    Equity Interests

Class 6 consists of the Equity Interests of the existing shareholders, namely Hamid Souirgi, Adlai Souirgi and Frances Plonka.

(1)    The Class is impaired.

(2)    Existing Equity Interests shall be cancelled. Upon the Effective Date, this Class will receive 40 shares of New Common Stock in Reorganized Parallel in the following allocation:

      1)    Hamid Souirgi shall receive 20 shares of New Common Stock.

      2)    Adlai Souirgi shall receive 10 shares of New Common Stock.

      3)    Frances Plonka shall receive 10 shares of New Common Stock.

### F.    Means of Effectuating the Plan

#### 1.    Funding for the Plan

HF 5900199v.6 #14622/0001

The Plan will be funded by the Loan Proceeds from a lending institution at the Debtor's discretion.

### 2.      Post-Confirmation Management

The Reorganized Debtor will manage its assets and satisfy any liabilities through its post-petition operations and revenue. It is anticipated that Reorganized Parallel's post confirmation management will be comprised of:

| NAME | TITLE |
|------|-------|
| Adlai Souirgi | Vice President |
| Hamid Souirgi | President |
| Frances Plonka | Secretary |
| Betty Gill | Manager, (responsible for the maintenance, repairs and improvements of Property). |

### 3.      Disbursing Agent

Reorganized Parallel, or its agent, shall act as its own Disbursing Agent for the purpose of making all distributions provided for under the Plan.

### a.      Powers of the Distribution Agent

The Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the disbursements to be made under this Plan; (ii) make Distributions contemplated by this Plan; (iii) comply with this Plan and the obligations thereunder; (iv) employ, retain, or replace professionals to represent it with respect to its responsibilities; and (v) exercise such other powers as may be vested in it pursuant to order of the Court or pursuant to this Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

HF 5900199v.6 #14622/0001

### b.    Duties of the Disbursing Agent

The Disbursing Agent shall have the duties of carrying out the disbursement under this Plan, which shall include taking or not taking any action which the Disbursing Agent deems to be in furtherance thereof, including, from the date of its appointment, making payments and conveyances and effecting other transfers necessary in furtherance of this Plan.

## G.    Other Provisions of the Plan

### 1.    Executory Contracts and Unexpired Leases

#### a.    Assumed If Not Rejected

All unexpired leases or executory contracts not otherwise rejected prior to the Effective Date, or subject to a motion to reject pending on the Effective Date, shall be deemed assumed on the Effective Date. The Debtor does not believe there are any amounts due under any of its unexpired leases and executory contracts to be assumed.

On the Effective Date, each of the Debtor's unexpired leases and executory contracts shall be assumed as obligations of the Reorganized Debtor. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each of Parallel's existing unexpired leases and executory contracts. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

#### b.    Objection to Assumption

Any entity which is a party to an executory contract or unexpired lease to be assumed hereunder may, at least three (3) days prior to the first scheduled date of the

HF 5900199v.6 #14622/0001

Plan Confirmation hearing file with the Bankruptcy Court and serve upon Debtor's Counsel any objection to assumption setting forth the basis for the objection, the nature of any alleged defaults thereunder and all monetary and non-monetary cures allegedly due. Failure to file an objection shall be deemed a consent to the proposed assumption.

### 2. Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3. Retention of Jurisdiction

The Court will retain jurisdiction as provided in the Plan.

### 4. Procedures for Resolving Contested Claims.

The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation of the Plan to object to the allowance of claims. The Proponent has reviewed the three proofs of claim that have been filed in the Chapter 11 Case. Proofs of claim were filed by 1) Aziz Laghzaoui, as a secured claim in the amount of $2,623,198.00 2) S2, as a secured claim in the amount of $241,353.09 and 3) Internal Revenue Service, as a secured claim in the amount of $200.00. As set forth herein, for the purpose of effectuating this Plan, the Internal Revenue Service and S2 Claims will be satisfied in full and each known Creditor of the Debtor in an Impaired Class has agreed to the specified treatment under the Plan in full satisfaction of such Creditor's Allowed Claim. Accordingly, if the Plan is Confirmed, Proponent does not intend to object or cause the Disbursing Agent to object to any of the filed proofs of claim. Nothing in this Plan will affect or extend the Bar Date.

### H. Conditions Precedent to Effective Date

HF 5900199v.6 #14622/0001

Subject to waiver by the Debtor, the occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

    **a.**    The Confirmation Order shall have become a Final Order;

    **b.**    Any and all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Plan shall have been executed, and approved by the Court, if necessary, prior to the Effective Date; and

    **c.**    The Debtor has received approval and shall have closed on its loan in an amount contemplated pursuant this Plan and shall have received the Loan Proceeds.

If the above conditions of the Plan are not met, the Debtor may (i) withdraw the Plan, or (ii) waive, in whole or in part, any such conditions.

### 2. Modification

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in section 1127(b) of the Bankruptcy Code.

## IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

### A. Who May Vote or Object

#### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

#### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an Impaired Class.

23

### a.     What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MAY 25, 2010 (*Docket No. 4*).

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's Schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

In addition to objections with respect to late filed Claims, any Claim filed after any applicable Bar Date shall, unless the Court otherwise directs, be deemed disallowed in full and expunged without further order of the Court. Filed or claims appearing on the Debtor's Schedules may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.

### b.     What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class

24

comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that Classes 2, 3, 4, 5, and 6 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Proponent believes that Class 1 is unimpaired and that S2, the holder of the Claim in Class 1 therefore does not have the right to vote to accept or reject the Plan.  Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who Is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code section 507(a)(1), (a)(2), and (a)(8) 73; and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

HF 5900199v.6 #14622/0001

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in this Disclosure Statement.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when (a) more than one-half (½) in number and (2) at least two-thirds in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (b) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Bankruptcy Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a)(8) and if the Plan does

not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has

not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8.      Request for Confirmation Despite Nonacceptance by Impaired Classes**

The Debtor asks the Bankruptcy Court to confirm this Plan by cramdown on

impaired classes if any of these classes do not vote to accept the Plan.

**B.      Best Interests of Holders of Claims and Interests/Liquidation Analysis**

The "best interests of creditors" test requires that the Bankruptcy Court find either

that all members of each impaired class have accepted the plan or that each holder of an

allowed claim or interest of each impaired class of claims or interests will receive or

retain under the plan on account of such claim or interest property of a value, as of the

effective date of the plan, that is not less than the amount that such holder would so

receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on

such date. As set forth, Parallel has reached agreements with holders of every claim in an

impaired class. Accordingly, Parallel does not expect any holder of an Allowed Claim to

reject the consensual Plan.  Each of the Debtor's known creditors in an impaired Class

has consented to the terms of the Plan to enable the Debtor to continue operating and

reorganize its business as a going concern.

To calculate what holders of Allowed Claims would receive if the Debtor were

hypothetically liquidated under chapter 7 of the Bankruptcy Code, the Court must first

determine the dollar amount that would be realized from the liquidation of the Debtor.

The funds obtained from liquidation would consist of the net proceeds from the

disposition of the Debtor's assets (after satisfaction of all valid liens) augmented by the

cash held by the Debtor and recoveries on actions against third parties, if any.  The fund

HF 5900199v.6 #14622/0001

would then be reduced by the costs of the liquidation. The costs of liquidation under chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, any unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as fees for attorneys, financial advisors and accountants) which would be allowed in the chapter 7 proceedings, interest expense on secured debt and claims incurred by the Debtor during the pendency of the case.

The Debtor believes that a chapter 7 liquidation of its assets would result in less value being realized under the Plan by holders of Allowed Claims. That belief is based upon, among other factors: (a) the amount which would be owed to S2, as a secured claim in the approximate amount of $250,000 and Laghzaoui, as a secured claim in the filed amount of $2,623,198, would likely prevent any distribution to any other creditor; (b) the additional administrative expenses involved in the appointment of a trustee, attorneys, accountants, and other chapter 7 professionals; (b) the substantial time which would elapse before creditors would receive any potential distribution in respect of their claims due to a trustee's need to become familiar with the Chapter 11 Case and the Debtor's books and records, and the trustee's duty to conduct independent investigations; and (d) the additional unsecured claims that may be asserted against the Debtor.

**C.    Financial Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan.

HF 5900199v.6 #14622/0001

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date (includes prospective Loan Proceeds) | $504,440.00 |
| **To Pay:**  Administrative claims (including professional fees) | $100,000.00 |
| **To Pay:**  Statutory costs & charges | $0 |
| **To Pay:**  Other Plan Payments due on Effective Date | $401,000.00 |
| Balance after paying these amounts................................................... | $3,440.00 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $2,440.00 | $ Cash in DIP Account now |
| +$12,000 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| +$480,000.00 | Borrowing |
| +$10,000 | Capital Contributions |
| +0 | Other |
| $504,440.00 | Total |

Borrowing will be from a lending institution of the Debtor's discretion and will be paid back as follows: The loan of $480,000 will be repaid at 8% interest resulting in an approximate $4,000 monthly payment.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

In summary, the Plan proposes to pay each of the Debtor's creditors upon the Effective Date its agreed treatment under the Plan in cash and/or shares of New Common

29

HF 5900199v.6 #14622/0001

Stock in Reorganized Parallel. As the Debtor's financial projections annexed as <u>Exhibit</u> <u>"C"</u> demonstrate, Debtor will have sufficient cash each month to conduct its business after paying operating expenses and taxes. The Plan Proponent contends that Debtor's financial projections are feasible in light of the financial records maintained by the Debtor prior to and during the pendency of the Chapter 11 Bankruptcy Case.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

**V.**

**CERTAIN RISK FACTORS TO BE CONSIDERED**

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED HEREIN BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

**A.     Certain Bankruptcy Law Considerations**

**1.     Risk of Non-Confirmation of the Plan**

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Court, there can be no assurance that the Court will reach the same conclusion.  Moreover, there can be no assurance that modifications of the

30

Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes.

### 2.    Risk of Non-Occurrence of the Effective Date

Although the Debtor believes that all of the conditions to the Effective Date will occur after the entry of the Confirmation Order, there can be no assurance as to the timing of the Effective Date or that such conditions will ever occur.

## B.    Additional Factors to be Considered

### 1.    The Debtor Has No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

### 2.    No Representations Outside This Disclosure Settlement Are Authorized

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

### 3.    Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary

Certain of the information contained in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately

31

prove to be incorrect, and contains projections which may be materially different from actual future experiences. There are uncertainties associated with any projections and estimates, and they should not be considered assurance or guarantees of the amount of funds or the amount of Claims in the various Classes that might be allowed.

**4.      No Legal or Tax Advice is Provided to You By This Disclosure Statement**

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each creditor or Equity Interest holder should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Equity Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**5.      No Admission Made**

Nothing contained herein shall constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Equity Interests.

**6.      Objection to Classifications**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of Claims and Interests under the consensual Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no guaranty that the Court would reach the same conclusion.

HF 5900199v.6 #14622/0001

# VI.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES AND NEW COMMON STOCK DISCUSSION

### A.    Taxes

The following discussion summarizes some of the more significant United States federal income tax consequences of the Plan to certain holders of Claims or Equity Interests. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "IRC" or "Tax Code"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), judicial decisions and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state or local income tax, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker-dealers and tax-exempt organizations). Accordingly, it should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Equity Interest.

Due to the complexity of certain aspects of the Plan, some of which are discussed below, the lack of applicable legal precedent and the possibility of changes in law, the

33

differences in the nature of various Claims, the differences in individual Claim or Equity Interest holders' methods of accounting, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties.

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE PLAN PROPONENTS WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

HF 5900199v.6 #14622/0001

1.    **Allocation of Consideration to Interest**

A portion of the consideration received by a holder in satisfaction of an Allowed Claim pursuant to the Plan may be allocated to the portion of such Allowed Claim (if any) that represents accrued but unpaid interest. Unless otherwise proscribed under applicable statute or rule, distributions under the Plan are allocated first to the principal of a Claim, then to any accrued interest. If any portion of the distributions were required to be allocated to accrued interest, such portion would be taxable to the holder as interest income, except to the extent the holder has previously reported such interest as income.

In that event, only the balance of the distributions would be considered received by the holder in respect of the principal amount of the Allowed Claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the holder with respect to the Allowed Claim. If any such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the distributions is treated as interest, holders may be required to provide certain tax information in order to avoid the withholding of taxes. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL INCOME TAX TREATMENT OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS.

TAX CONSEQUENCES MAY VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR

HF 5900199v.6 #14622/0001

REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX
CONSEQUENCES UNDER THE PLAN.

**B.      New Common Stock**

On or before the distribution Date, Reorganized Parallel shall issue for
distribution in accordance with the provisions of the Plan, the 175 shares of New
Common Stock required for distribution pursuant to the provisions thereof. All securities
to be issued shall be deemed issued as of the Effective Date regardless of the date on
which they are actually issued and distributed.

The issuance and distribution of New Common Stock under the Plan to the
holders of certain Allowed Claims and Equity Interests shall be made under section
1145(a) of the Bankruptcy Code as of the Effective Date. The said distributions shall be
without further act or action by any person, except as may be required by Reorganized
Parallel's certificate of incorporation, by-laws, or applicable law, regulation, order or
rule; and all documents evidencing the distributions shall be executed and delivered as
provided for in the Plan.

**VII.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

The Plan provides that upon confirmation of the Plan, the Debtor shall be
discharged of liability for payment of debts incurred before confirmation of the Plan, to
the extent specified in 11 U.S.C. §1141. However, any liability imposed by the Plan will
not be discharged. If Confirmation of the Plan does <u>not</u> occur or if, after Confirmation
occurs, the Debtor elects to terminate the Plan, the Plan shall be deemed null and void. In
such event, nothing contained in the Plan shall be deemed to constitute a waiver or

36

release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate. The provisions of the Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.      Exculpation**

Neither the Debtor, nor any of its respective agents, directors, officers, employees, members shareholders, professionals (including counsel), shall have or incur any liability to any creditor of any act, omission, transaction or other activity of any kind or nature in connection with, or arising out of the Chapter 11 Case, the confirmation or consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.

**C.      Vesting of Property in the Debtor**

Except as provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

**D.      Modification of Plan**

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.  Proponent further reserves the right

37

to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**E.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under section 1112(b). If the Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**F.    Post Confirmation Fees**

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the U.S. Trustee post-confirmation until such time as the chapter 11 case is converted, dismissed, or closed pursuant to a final decree.

**VIII.**

**ALTERNATIVES TO REORGANIZATION PLAN**

If the Plan is not confirmed, then the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code.   In that event, a trustee would be appointed to liquidate and distribute the remaining assets of the estate.   The Debtor believes that a liquidation under chapter 7 would likely result in a lower return to holders

38

of claims, due in part to the nature of the Property, its key asset, and the time which
would elapse until proceeds are received.

## IX.

## CONCLUSION

The Debtor as the plan proponent urges holders of Claims and
Interests entitled to vote on the Plan to accept the Plan and to evidence such
acceptance by returning their ballots so they will be received not later than [  ] at [  ]
:00 p.m.

Date:  September 6, 2010                /s/ Adlai Souirgi
                                        **Parallel Construction, Ltd.**

                                        By:  Adlai Souirgi
                                        Title: Vice President

39

HF 5900199v.6 #14622/0001

## EXHIBIT "A"

**Plan**

Paul H. Schafhauser, Esq.
John M. August, Esq.
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, NJ 07102
Tel 973.274.2000
Fax 973.274.2500
Attorneys for Parallel Construction, Ltd.

|  |  |
|---|---|
| IN THE MATTER OF: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY NEWARK VICINAGE |
| PARALLEL CONSTRUCTION, LTD., | CHAPTER 11 |
| DEBTOR. | CASE NO. 10-12401 |

## PLAN OF REORGANIZATION OF PARALLEL CONSTRUCTION, LTD.

Parallel Construction, Ltd, the Debtor/Plan Proponent respectfully submits its Plan of
Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed
hereto and made a part hereof.

                                        PARALLEL CONSTRUCTION, LTD.


                                        BY: /s/Adlai Sourgi
                                              Adlai Souirgi
                                              Vice President

DATED:   September 6, 2010

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 3 |
| | A. General Overview | 3 |
| | B. Definitions | 3 |
| | C. Unclassified Claims | 9 |
| | 1. Administrative Expenses and Fees | 10 |
| | 2. Priority Tax Claims | 10 |
| | 3. Priority Non-Tax Claims | 11 |
| | D. Classification Claims and Interests | 12 |
| | 1. Criterion of Class. | 12 |
| | 2. Class Categories. | 12 |
| | 3. Treatment of Secured Claims. | 12 |
| | 4. Treatment of General Unsecured Claims. | 13 |
| | 5. Treatment of Equity Interest Holders. | 14 |
| | E. Acceptance or Rejection of Plan | 14 |
| | F. Plan Interpretation, Confirmation and Voting | 15 |
| | 1. Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired | 15 |
| | 2. Voting of Claims | 15 |
| | 3. Acceptance by Impaired Class | 15 |
| | 4. Presumed Acceptances of Plan | 15 |
| | 5. Cram Down | 15 |
| | G. Means of Effectuating the Plan | 15 |
| | 1. Funding for the Plan. | 16 |
| | 2. Post-Confirmation Management. | 16 |
| | 3. Disbursing Agent. | 16 |
| III. | TREATMENT OF MISCELLANEOUS ITEMS | 17 |
| | A. Executory Contracts and Unexpired Leases | 17 |
| | 1. Assumptions. | 17 |
| | 2. Rejections. | 17 |
| | B. Changes in Rates Subject to Regulatory Commission Approval | 18 |
| | C. Retention of Jurisdiction | 18 |
| | D. Procedures for Resolving Contested Claims | 20 |
| | E. Notices under the Plan | 20 |
| IV. | EFFECT OF CONFIRMATION OF PLAN | 20 |
| | A. Discharge | 20 |
| | B. Release | 21 |
| | C. Vesting of Assets | 22 |
| | D. Withdrawal and Modification of Plan | 23 |
| | E. Exculpation | 23 |
| | F. Term of Bankruptcy Injunction or Stay | 24 |
| | G. General Injunctions | 24 |
| | H. All Distributions Received in Full and Final Satisfaction | 25 |

i

# TABLE OF CONTENTS

**Page**

I.    No Modification of Res Judicata Effect................................................................25

J.    Conditions Precedent to Effective Date.............................................................25

K.    Post-Confirmation Conversion/Dismissal .........................................................26

L.    Post-Confirmation Quarterly Fees .....................................................................26

M.   Miscellaneous Provisions....................................................................................26

HF 5897583v.5 #14622/0001

# I.

## INTRODUCTION

Parallel Construction, Ltd. ("Parallel or Debtor") is the debtor in this Chapter 11 bankruptcy case ("Chapter 11 Case").  On January 28, 2010, Parallel commenced its Chapter 11 Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  This document is the Chapter 11 plan ("Plan") proposed by Parallel ("Proponent").  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan.  In other words, the Proponent seeks to reorganize its business affairs and capital structure and will accomplish payments under the Plan through a loan in the amount of $480,000 to be provided by a lending institution of the Debtor's discretion (the "Loan Proceeds").  Creditors holding Allowed Claims will receive distributions in the form of cash and/or stock in Reorganized Parallel as more fully set forth below.

# II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.**  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have

3

the meanings assigned to them in this Section of the Plan. In all references herein to any parties,

persons, entities, or corporations, the use of any particular gender or the plural or singular

number is intended to include the appropriate gender or number as the text may require.

1. **Administrative Expense** shall mean any cost or expense of administration of the

Chapter 11 Case allowable under section 507(a) of the Bankruptcy Code, including, without

limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual

and necessary expense of operating the business of the Debtor, any indebtedness or obligation

incurred or assumed by the Debtor in connection with the conduct of its business or for the

acquisition or lease of property or the rendition of services to the Debtor, all allowances of

compensation and reimbursement of expenses, any fees or charges assessed against the estate of

any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and

expenses incurred by the Proponent in connection with the proposal and confirmation of this

Plan.

2. **Allowed** when used as an adjective preceding the words "Claims" or "Equity

Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was

filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of

claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed,

which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or

contingent and, in either case, a Claim as to which no objection to the allowance thereof has been

interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been

interposed and such Claim has been allowed in whole or in part by a Final Order. Unless

otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for

4

purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.      **Allowed Administrative Expense** shall mean any Administrative Expense allowed under section 507(a)(1) of the Bankruptcy Code.

4.      **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5.      **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6.      **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. section 158, the unit of such District Court constituted pursuant to 28 U.S.C. section 151.

7.      **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8.      **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9.      **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Parallel is the Debtor.

10.      **Cash** means cash and cash equivalents, including but not limited to bank and other deposits, wire transfers, checks and other similar items.

11.      **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

HF 5897583v.5 #14622/0001

disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  All claims as such term is defined in section 101(5) of the Bankruptcy Code.

12.    **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan or a Claim or Interest designated for specific treatment pursuant to the terms of this Plan.

13.    **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

14.    **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

15.    **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

16.    **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

17.    **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.  This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

18.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

19.    **Debtor** shall mean Parallel Construction, Ltd.

HF 5897583v.5 #14622/0001

20.    **Disbursing Agent** shall mean the Debtor or its agent, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

21.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to section 1125 et seq. of the Bankruptcy Code.

22.    **Effective Date** means the date which shall occur no earlier than the first Business Day after (a) the Confirmation Order (together with the other Orders entered in and of Confirmation on this Plan and signed contemporaneously with the Confirmation Order) has been entered pursuant to Bankruptcy Rules 5003 and 9021; and (b) all conditions precedent have been satisfied or waived as provided in the Plan.

23.    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

24.    **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

25.    **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

26.    **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

27.    **New Common Stock** means the 175 shares of Reorganized Parallel common stock to be issued under the Plan to certain holders of allowed Claims and Equity Interests.

7

28.     **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

29.     **Petition Date** shall mean January 28, 2010, the date on which the Debtor filed this petition for relief commencing the Chapter 11 Case.

30.     **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

31.     **Priority Non-Tax Claim** means a Claim which is entitled to priority treatment under section 507(a) of the Bankruptcy Code, other than a Property Tax Claim or an Administrative Expense Claim.

32.     **Priority Tax Creditor** shall mean a creditor holding a Priority Tax Claim.

33.     **Priority Tax Claim** shall mean a Claim of a governmental unit of the kind specified in section 502(i), 507(a)(8) or 1129(a)(9)(D) of the Bankruptcy Code.

34.     **Proceedings** shall mean the Chapter 11 Case of the Debtor.

35.     **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

36.     **Professional Claim** means and refers to a claim by any and all professionals as provided for in sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

37.     **Proponent** means the Debtor, Parallel Construction, Ltd.

38.     **Reorganized Parallel** means the Debtor as reorganized on and after the Effective Date after confirmation of the Plan.

8

39.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with section 506(a) of the Bankruptcy Code.

40.    **Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

41.    **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein.   The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.   Moreover some terms defined herein are defined in the section in which they are used.

**C.     Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.   As such, the Proponent has not placed the following claims in a class.   The treatment of these claims is provided below.

9

1.    **Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtor's

Chapter 11 case which are allowed under Code Section 503(b).  Fees payable to the Clerk of the

Bankruptcy Court and the Office of the United States Trustee were also incurred during the

Chapter 11 Case.  The Code requires that all administrative expenses be paid on the Effective

Date of the Plan, unless a particular claimant agrees to a different treatment.

Court Approval of Professional Compensation and Expenses Required:

The Court must approve all professional compensation and expenses.  Each professional

person requesting compensation in the case pursuant to sections 327, 328, 330, 331, 503(b) or

1103 of the Bankruptcy Code shall file an application for allowance of final compensation and

reimbursement of expenses not later than sixty (60) days after the Confirmation Date.  Nothing

herein shall prohibit each professional person from requesting interim compensation during the

course of this Chapter 11 Case pending Confirmation of this Plan.  No motion or application is

required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as

those fees are determined by statute.

2.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described

by Bankruptcy Code section 507(a)(8).  The Code requires, and thus this Plan provides, that each

holder of such a section 507(a)(8) priority tax claim receives the present value of such claim in

deferred cash payments, over a period not exceeding six years from the date of the assessment of

such tax.  On, or as soon as reasonably practicable after the Effective Date, except to the extent

that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, each

holder of an Allowed Priority Tax Claim shall be entitled to receive, in full settlement,

satisfaction, release and discharge of and in exchange of such Allowed Priority Tax Claim, as

10

shall have been determined by the Debtor  Cash in an amount equal to the Allowed but unpaid portion of such Allowed Priority Tax Claim, or such other less favorable treatment as to which the Debtor or Reorganized Parallel and such holder shall have agreed upon in writing.

The following chart lists all of the Debtor's known section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • New York State Department of Taxation and Finance | $25,000 (est.) | 100% cash payment upon Effective Date |
| • Internal Revenue Service | $200 (est.) | 100% cash payment upon Effective Date |

3.      **Priority Non-Tax Claims**

Certain priority non-tax claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment.  On, or as soon as reasonably practicable after the later of (a) the Effective Date, (b) the date of any distribution immediately following the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Priority Non-Tax Claim or (c) the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to and as specified by a court order, the holder of such Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, either (i) Cash equal to the unpaid portion of the face amount of such Allowed Priority Non-Tax Claim or (ii) such other less favorable treatment as to which the Debtor or Reorganized Parallel and such holder shall have agreed upon in writing.

HF 5897583v.5 #14622/0001

**D.    Classification Claims and Interests**

    1.    **Criterion of Class**.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.

    2.    **Class Categories**.

The following classes of Claims and Equity Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which classes shall be mutually exclusive:

| CLASS | CLASS NAME | STATUS |
|---|---|---|
| Class 1 | Secured Claim of S2, LLC | Unimpaired/Deemed to Accept |
| Class 2 | Secured Claim of Aziz Laghzaoui | Impaired/Entitled to Vote |
| Class 3 | Secured Claim of Auditas, Inc. | Impaired/Entitled to Vote |
| Class 4 | Unsecured Claim of Betty Gill | Impaired/Entitled to Vote |
| Class 5 | Unsecured Claim of BW Financial Group LLC | Impaired/Entitled to Vote |
| Class 6 | Equity Interests | Impaired/Entitled to Vote |

    3.    **Treatment of Secured Claims**.

Secured claims are claims secured by liens on property of the estate. The following represents all classes containing all of the Debtor's secured pre-petition claims and their treatment under this Plan:

**Class 1.**    Class 1 consists of the Secured Claim of S2 which was filed in the amount of $241,353.09. S2 is the owner of a certain tax sale certificate purchased in connection with taxes owed by the Debtor to Jersey City, New Jersey for the tax years of 2002 through the fourth quarter of 2009. The tax sale certificate has not been redeemed and

HF 5897583v.5 #14622/0001

interest continues to accrue. For purposes of this Plan, the Class 1 S2 Claim is deemed Allowed. The Class 1 S2 Claim will be satisfied in full upon the Effective Date and the certificate shall be deemed to have been redeemed.

1.  The Allowed Class 1 S2 Claim is unimpaired.

**Class 2.**   Class 2 consists of the Secured Claim of Aziz Laghzaoui ("Laghzaoui") which was filed in the amount of $2,623,198 and which was scheduled by the Debtor in the amount of $425,000. Laghzaoui holds a note and mortgage on the Property, dated August 4, 1989 in the sum of $375,000. The note and mortgage are unpaid.  For purposes of this Plan, the Class 2 Laghzaoui Claim is deemed Allowed in the amount of $425,000. Pursuant to an agreement with Laghzaoui, the Class 2 Laghzaoui Claim will be satisfied upon the Effective Date through (1) a cash payment to Laghzaoui in the sum of $100,000; (2) the tender to Laghzaoui of 50 shares of New Common Stock in Reorganized Parallel and (3) a cash payment to Laghzaoui in the sum of $100,000 if the Property is sold or converted to a condominium status. Upon the Effective Date, Laghzaoui shall deliver to Parallel a certificate of affidavit in satisfaction of mortgage thereby cancelling the note and mortgage.

1.  The Allowed Class 2 Laghzaoui Claim is Impaired.

**Class 3.**   Class 3 consists of the Secured Claim of Auditas, Inc. ("Auditas") which was scheduled by the Debtor in the amount of $175,000. Auditas is the holder of a mortgage on the Property, dated October, 2006 in the amount of $175,000. The mortgage is unpaid. For purposes of this Plan, the Class 3 Auditas Claim is deemed Allowed.  Pursuant to an agreement with Auditas, the Class 3 Auditas Claim will be satisfied upon the Effective Date through the tender to Auditas of 31 shares of New Common Stock in Reorganized Parallel. Upon the Effective Date, the mortgage shall be deemed cancelled.

1.  The Allowed Class 3 Auditas Claim is Impaired.

4.    **Treatment of General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy

Code section 507(a).  These claims are to be treated as follows:

**Class 4.**   Allowed Unsecured Claim of Betty Gill

Class 4 consists of the Unsecured Claim of Betty Gill ("Gill") which was scheduled by the Debtor in the amount of $164,000. Ms. Gill is owed monies from the Debtor in connection with money loaned and certain services rendered and certain labor performed by Ms. Gill. For purposes of this Plan, the Class 4 Gill Claim is deemed Allowed. Pursuant to an agreement with Gill, the Class 4 Gill Claim will be satisfied upon the Effective Date through (1) a cash payment to Gill in the sum of $25,000 and (2) the tender to Gill of 19 shares of New Common Stock in Reorganized Parallel.

HF 5897583v.5 #14622/0001

1.  The Allowed Class 4 Gill claim is impaired.

**Class 5.**   Allowed Unsecured Claim of BW Financial Group LLC

Class 5 consists of the Unsecured Claim of BW Financial Group LLC ("BW") which was scheduled by the Debtor in the amount of $188,600.  BW is the holder of a note in the amount of $188,600, issued to BW in December, 2005 in connection with a loan to pay certain taxes on the Property. The loan is unpaid. For purposes of this Plan, the Class 5 BW Claim is deemed Allowed. Pursuant to an agreement with BW, the Class 5 BW Claim will be satisfied upon the Effective Date through the tender to BW of 35 shares of New Common Stock in Reorganized Parallel. Upon the Effective Date, the note shall be deemed cancelled.

1.  The Allowed Class 5 Claim is impaired.

5.   **Treatment of Equity Interest Holders**.

The members of this class will be treated as follows:

**Class 6.**   Equity Interests

Class 6 consists of the Equity Interests of the existing shareholders, namely Hamid Souirgi, Adlai Souirgi and Frances Plonka.

1.  The Class is impaired.

2.  Existing Equity Interests shall be cancelled. Upon the Effective Date, this Class will receive of 40 shares of New Common Stock in Reorganized Parallel to be allocated as follows:

    1)   Hamid Souirgi will receive 20 shares of New Common Stock

    2)   Adlai Souirgi will receive 10 shares of New Common Stock

    3)   Frances Plonka will receive 10 shares of New Common Stock

**E.   Acceptance or Rejection of Plan**

Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan.  A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the

14

Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**F.    Plan Interpretation, Confirmation and Voting**

1.    **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**. In event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

2.    **Voting of Claims**. Each holder of an Allowed Claim shall be entitled to vote to accept or reject the Plan.

3.    **Acceptance by Impaired Class**. Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

4.    **Presumed Acceptances of Plan**. Class 1 is unimpaired under the Plan and, therefore S2, the holder of the Class 1 Claim is conclusively presumed to have accepted the Plan.

5.    **Cram Down**. Classes 2,3,4,5, and 6 are Impaired. The Debtor requests that, in the event that any Impaired Class entitled to vote on the Plan rejects the Plan, the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the rejection of any Class.

**G.    Means of Effectuating the Plan**

15

1.  **Funding for the Plan**.

The Plan will be funded by the following:  Parallel will receive a loan in an approximate amount of $480,000.00 which will be distributed, in part, to holders of Administrative Expense Claims and Allowed Claims under this Plan and to fund further renovations to the Property.

2.  **Post-Confirmation Management**.

The Reorganized Debtor will manage its assets and satisfy any liabilities through its post petition operations and revenues.  It is anticipated that Hamid Souirgi will continue to serve as President, Adlai Souirgi will continue to serve as Vice President and Frances Plonka will continue to serve as Secretary. Betty Gill will continue as manager of the Property.

3.  **Disbursing Agent**.

Reorganized Parallel shall serve as its own Disbursing Agent for the purpose of making all distributions provided for under the Plan.  The Debtor's corporate existence shall continue after the Commencement Date.  The Disbursing Agent shall serve without bond.

(a)     Powers of the Distribution Agent

The Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the disbursements to be made under this Plan; (ii) make Distributions contemplated by this Plan; (iii) comply with this Plan and the obligations thereunder; (iv) employ, retain, or replace professionals to represent it with respect to its responsibilities; and (v) exercise such other powers as may be vested in it pursuant to order of the Court or pursuant to this Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

(b)     Duties of the Disbursing Agent

16

The Disbursing Agent shall have the duties of carrying out the disbursement under this Plan, which shall include taking or not taking any action which the Disbursing Agent deems to be in furtherance thereof, including, from the date of its appointment, making payments and conveyances and effecting other transfers necessary in furtherance of this Plan.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.    Executory Contracts and Unexpired Leases**

1.    **Assumptions**.

All unexpired leases or executory contracts not otherwise rejected prior to the Effective Date, or subject to a motion to reject pending on the Effective Date, shall be deemed assumed on the Effective Date.

On the Effective Date, each of the Debtor's unexpired leases and executory contracts shall be assumed as obligations of the Reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract.

2.    **Rejections**.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THE LATER OF THIRTY (30) DAYS AFTER THE DATE OF REJECTION OR 90 NINETY DAYS AFTER FEBRUARY 24, 2010 (i.e. May 25, 2010) WHICH WAS THE DATE OF THE INITIAL MEETING OF CREDITORS PURSUANT TO SECTION 341(a)  OF THE BANKRUPTCY CODE .**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

17

**B.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction**

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and this Plan pursuant to, and for the purpose of sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date and the allowance of Claims resulting therefrom;

(b)      To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, pending on the Effective Date;

(c)      To ensure that distributions to holders of Administrative Expense Claims and Allowed Claims are accomplished as provided by this Plan;

(d)      To resolve disputes as to the ownership of any Claim;

(e)      To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense Claim, or Claim, or Equity Interest.

(f)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(g)      To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce this Plan and the transactions contemplated thereunder;

18

HF 5897583v.5 #14622/0001

(h)     To consider any modification of this Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine applications for compensation and reimbursement of expenses of Professional Persons under sections 330, 331 and 503(b) of the Bankruptcy Code;

(j)     To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of this Plan;

(k)     To hear and determine any issue for which this Plan requires a Final Order of the Court;

(l)     To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of this Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in this Plan and the Confirmation Order;

(m)     To hear and determine motions seeking a compromise, settlement, release, or abandonment of any contested Claim or any claim or cause of action arising on or before the Effective Date by or against the Debtor;

(n)     To recover all assets of the Debtor and property of the Estate, wherever located;

(o)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to this Plan; and

19

(q)     To enter a final decree closing the Chapter 11 Case.

**D.      Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Parallel or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.

**E.      Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:

> Mr. Adlai Souirgi
> Vice President
> Parallel Construction, Ltd.
> 100 Central Park South
> New York, NY 10019
>
> With a copy to:
>
> Herrick, Feinstein LLP
> Attn: John M. August, Esq.
> One Gateway Center
> Newark, NJ 07102

**IV.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. § 1141.   However, any liability imposed by the Plan will not be discharged.   If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event,

20

nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate. The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

**B.    Release**

On the Effective Date, the Debtor, on behalf of itself and the Estate, shall be deemed to release unconditionally all of its respective managers, officers, directors, employees, advisors, attorneys, financial advisors, accountants and other professionals past and present, and each of their representatives and agents (including any professionals retained by such Persons or Entities) (individually, a "Released Party" and collectively, the "Released Parties") from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken in their respective capacities described above or any omission, transaction, event or other occurrence taking place from the time commencing on the Petition Date through the Effective Date in any way relating to the Debtor, the Chapter 11 Case or this Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court and (ii) Reorganized Parallel shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any claims or any such Persons or Entities asserted against the Debtor. Except as otherwise expressly provided for in this Plan, the distributions and rights afforded in the Plan shall be complete and full satisfaction, discharge and release, effective as of the

21

Effective Date, of all Claims against the Debtor or any of its assets or properties of any nature

whatsoever. Commencing on the Effective Date, except as otherwise expressly provided for in

this Plan, all Creditors shall be precluded forever from asserting against the Debtor and its

respective agents, employees, principals, members, officers, shareholders, representatives,

attorneys, or employees and their respective assets and properties any other or further liabilities,

liens, Claims, encumbrances, obligations, or Interests, including but not limited to all principals

and accrued and unpaid interest on the debts of the Debtor based on any act or omission,

transaction or other activity or security instrument or other agreement of any kind or nature

occurring, arising or existing prior to the Effective Date, that was or could have been the subject

of any Claim or Interest, whether or not Allowed.

On and after the Effective Date, as to every Claim, every Holder of a Claim shall be

precluded from asserting against the Debtor, and its respective agents, employees, principals,

officers, members, shareholders, representatives, financial advisors, accountants, attorneys or

employees and its respective assets and/or properties any further Claim based on any document,

instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to

the Effective Date except to the extent of written pre-existing guarantees which are not affected

by this Plan. Notwithstanding anything contained herein to the contrary, confirmation of this

Plan shall not affect any pre-existing guarantees or other obligations of non debtors.

## C.    Vesting of Assets

Except as otherwise expressly provided in this Plan and the Confirmation Order, on the

Effective Date, Reorganized Parallel shall be vested with all of the property of the Estate free

and clear of all Claims, liens, encumbrances, charges and other interests including but not limited

to that of Claimants and holders of Equity Interests.

22

**D.**     **Withdrawal and Modification of Plan**

This Plan may be withdrawn or modified by the Debtor at any time prior to the
Confirmation Date. The Reorganized Debtor may modify the Plan in any manner consistent
with section 1127 of the Bankruptcy Code prior to substantial consummation thereof. Upon
request by the Reorganized Debtor, this Plan may be modified after substantial consummation
with the approval of the Bankruptcy Court, provided that such modification does not affect the
essential economic treatment of any Person that objects in writing to such modification.

However, the Court may require a new disclosure statement or revoting on the Plan if
Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long
as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed
modification after notice and a hearing.

**E.**     **Exculpation**

The Debtor, Reorganized Parallel and the Released Parties (i) shall have no liability
whatsoever to any holder or purported holder of an Administrative Expense Claim, Claim, or
Equity Interest for any act or omission in connection with, or arising out of, this Plan, the
Disclosure Statement, the negotiation of this Plan, the negotiation of any Plan document, the
pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of
this Plan, the Chapter 11 Case, the consummation of this Plan, the administration of this Plan or
the property to be distributed under this Plan, or any transaction contemplated by this Plan or the
Disclosure Statement or in furtherance thereof, except for willful misconduct or gross negligence
as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of
counsel with respect to their duties and responsibilities under this Plan. This exculpation shall be
in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other

23

applicable laws or rules protecting such Released Parties from liability. Neither the Debtor, nor any of its respective agents, directors, officers, employees, members, shareholders, professionals (including counsel), shall have or incur any liability to any creditor of any act, omission, transaction or other activity of any kind or nature in connection with, or arising out of the Chapter 11 Case, the confirmation or consummation of the Plan or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.

**F.      Term of Bankruptcy Injunction or Stay**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**G.      General Injunctions**

(a) Injunctions Against Interference with Consummation or Implementation of Plan. All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.

(b) Injunction Against Prosecution of Causes of Action. Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the commencement or continuation of any action, employment of process, or act to collect, offset, or recover any Claim or cause of action (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (iii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iv) the assertion of

24

any right of setoff, counterclaim, exculpation, subrogation or recoupment of any kind, in each case against the Debtor, the Estate, to the extent satisfied, or released, or enjoined under this Plan, to the fullest extent authorized or provided by the Bankruptcy Code.

**H.      All Distributions Received in Full and Final Satisfaction**

Except as set otherwise set forth herein, all payments and all distributions to be made hereunder on account of Claims (including Administrative Expense Claims) shall be received in full and final satisfaction, settlement, release and discharge of such Claims as against the Debtor, its assets and the Estate.  On and after the Effective Date, the Debtor is released from all Claims and other liabilities in existence one day prior to the Effective Date, subject to the continuing obligations of the Debtor under the Plan.

**I.      No Modification of Res Judicata Effect**

The provisions of this section are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Bankruptcy Case, including without limitation the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

**J.      Conditions Precedent to Effective Date**

Subject to waiver by the Debtor, the occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

(a)      The Confirmation Order shall have become a Final Order;

(b)      Any and all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Plan shall have been executed, and approved by the Court, if necessary, prior to the Effective Date;

(c)      The Debtor shall have received approval of and shall have closed on its loan and shall have received Loan Proceeds in a sufficient amount as contemplated in this

25

Plan.

If the above conditions of the Plan are not met, the Debtor may (i) withdraw the Plan, or (ii) waive, in whole or in part, any such conditions.

**K.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**L.    Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

**M.    Miscellaneous Provisions**

**Headings**. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

**No Attorneys' Fees**. The Debtor shall pay no attorneys' fees with respect to any Claim or Interest, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

**Reservation of Rights**. If the Confirmation Order is not entered, or if the Plan is confirmed but does not become effective, the rights of all parties in interest in the Bankruptcy Case are and will be reserved in full.

HF 5897583v.5 #14622/0001

**Binding Effect**. The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under Chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Debtor's Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

**Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) with respect to matters of corporate governance, the laws of the State of New Jersey applicable to contracts executed in such State by residents thereof and to be performed entirely within such State will govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.


Date: September 6, 2010                    **Parallel Construction, Ltd.**

                                           By: **/s/ Adlai Souirgi**_____
                                               Name: Adlai Souirgi
                                               Title:   Vice President


27

**<u>EXHIBIT "B"</u>**

08/23/2010 10:10 FAX 12123080500                    COPY GIVING                    ☐008

PARALLEL CONSTRUCTION LTD.    Case No. 10-12401 (DHS)
                                        JULY 2010

MONTHLY OPERATING REPORT
(SINGLE ASSET REAL ESTATE CASE)
File with Court and submit copy to United States Trustee within 20 days after end of month

Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | ✓ | |
| Copies of bank statements | | | |
| Cash disbursements journals | | | |
| Statement of Operations | MOR-2 (PRE) | ✓ | |
| Balance Sheet | MOR-3 | | |
| Status of Postpetition Taxes | MOR-4 | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | | |
| Summary of Unpaid Postpetition Debts | MOR-4 | | |
| Listing of aged accounts payable | | | |
| Accounts Receivable Reconciliation and Aging | MOR-5 | ✓ | |
| Debtor Questionnaire | MOR-5 | ✓ | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that the documents attached to this report are true and correct to the best of my knowledge and belief.

_____                              _____
Signature of Debtor                                   Date

_____                              July 31ST
Signature of Joint Debtor                             Date

Betty Gill                                            July 31ST 2010
_____                              _____
Signature of Authorized Individual                   Date

BETTY GILL                                           Manager
_____                              _____
Printed Name of Authorized Individual                Title of Authorized Individual

08/23/2010 16:34 FAX 12123080567          COPY CENTER          @002

### Parallel Const. Ltd.
Trial Balance
July, 2010

|  | Debit | Credit |
|---|---|---|
| Cash | | |
| Accounts Receivable (Rents) | | $5,285.00 |
| Unit: | | |
| Basement | 385.00 | |
| 1E   Melisa | 1200.00 | |
| 1W   Samassa | 700.00 | |
| 2E   Andres (New Tenant) | 1350.00 | |
| 2W   Management | 0 | |
| 3E   Josette Ratti | 1200.00 | |
| 3 W  Johnston | 450.00 | |
| 4E   VACANT | 0 | |
| 4W   VACANT | 0 | |
| Insurance | | |
| Cleaning & Maintenance | 200.00 | |
| Accounts Payable   Alex Buzunov | 578.00 | |
| Repairs & Paint Apt 4E | 920.00 | |
| U.S. Trustee | | |
| Utility Water Dept | | |
| PSE&G | 2,000.00 | |
| Management Fees | 800.00 | |
| Misc. Expense Bank fees/ Refrigerator | 323.96 | |
| TOTAL | $4,821.96 | $5,285.00 |

08/30/2010 10:35:01 DHS 9083080900

FARMILET - CONSTRUCTION                    JULY 2010

STATEMENT OF OPERATIONS - Single Asset Real Estate Case
(Accrual Statement)

| | Current Month | Cumulative Filing to Date |
|---|---|---|
| **INCOME** | | |
| Rental Income | 5,285.00 | 33,336.84 |
| Additional Rental Income | | |
| Common Area Maintenance Reimbursement | | |
| Net Income from Non Rent | | |
| **EXPENSES** | | |
| Advertising | | |
| Bank Expense | | |
| Building and Maintenance | 500.00 | 1,288.19 |
| Commissions | | |
| Officer Compensation* | | 1,948.21 |
| Insurance | | |
| Management Fees | 800.00 | 4,800.00 |
| Payroll Taxes | | |
| Salaries | 750.00 | 3,040.65 |
| Supplies | | 217.57 |
| Taxes - Real Estate | | |
| Taxes - Other | | |
| Telephone Expense | | |
| Utilities   UNITED WATER | | 5,000.00 |
|       PSP&G      APT. 4E | 500.00 | 500.00 |
|             PSE&G | 1,500.00 | 7,200.00 |
| REFRIGERATOR / MISC  EXPENSES | 323.96 | 677.34 |
| REEMBURSEMENT  OF  RENT  ALEX  BUZINOV | 528.00 | 528.00 |
| Total Operating Expenses Before Depreciation | 4,821.96 | 25,251.96 |
| Depreciation/Depletion/Amortization | | |
| Net Operating Income After Depreciation & Expenses | | |
| **OTHER INCOME AND EXPENSES** | | |
| Other Expense (List Below) | | |
| | | |
| | | |
| Gross Expense | | |
| Net Expense (List Below) | | |
| | | |
| | | |
| Net Income (Loss) Before Reorganization Items | | |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | | |
| A. Debtor Attorney Fees | | 650.00 |
| U.S. Trustee for Accumulated and Term Chapter 11** | | |
| Other Professional Fees | | |
| Total Reorganization Expenses (List Below) | | |
| | | |
| | | |
| | | |
| | | |
| Total Reorganization Expenses | 4,821.96 | 25,901.96 |
| Plus Interest | | |
| **X  Income (Loss)** | 463.04 | 6,433.88 |

*Insider is defined in 11 U.S.C. Section 101(31).

** Interest earned on Accumulated Cases from Chapter 11 - Interest earned on cash accumulated during the chapter 11 case.

Case 10-12401-DHS   Doc 39   Filed 08/30/10   Entered 08/30/10 16:58:31   Desc Main
Document    Page 4 of 5
08/29/2010 10:34:401 F212308040C

PARALLEL CONSTRUCTION LTD.

STATEMENT OF OPERATIONS

96 DUNCAN AVE

10-12401 (DHS)
JULY 2010

| Tenant | Unit | Rent | Rent Monthly |
|---|---|---|---|
| ADAMES | BASEMENT | | 385.00 |
| M. HULSE | 1E | | 1200.00 |
| SAMISS | 1W | | 700.00 |
| ANDRES | 2E | | 1350.00 |
| MANAGEMENT | 2W | | |
| JOSEIE RATTI | 3E | | 1200.00 |
| JOHNSTON | 3W | | 450.00 |
| VACANT | 4E | | — |
| VACANT | 4W | | — |

PARALLEL CONST LTD.

Case 10-12401 (DHS)

JULY 2010

## ACCOUNTS RECEIVABLE RECONCILIATION AND AGING

| Accounts Receivable Reconciliation | Amount |
|---|---|
| Total Accounts Receivable at the beginning of the reporting period | 5,285.00 |
| + Amounts billed during the period | |
| - Amounts collected during the period | |
| Total Accounts Receivable at the end of the reporting period | |

| Accounts Receivable Aging | | Amount |
|---|---|---|
| 0 - 30 days old | SAMASSA APT 1W | 700.00 |
| 31 - 60 days old | | |
| 61 - 90 days old | | |
| 91+ days old 120 JOSETTE RATTI 3E | | 400.00 |
| Total Accounts Receivable | | |
| Amount considered uncollectible (Bad Debt) | | |
| Accounts Receivable (Net) | | |

## DEBTOR QUESTIONNAIRE

| Must be completed each month | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below. | | ✓ |
| 2. Have any funds been disbursed from any account other than a debtor in possession account this reporting period? If yes, provide an explanation below. | | ✓ |
| 3. Have all postpetition tax returns been timely filed? If no, provide an explanation below. | | ✓ |
| 4. Are workers compensation, general liability and other necessary insurance coverages in effect? If no, provide an explanation below. | ✓ | |

FORM MOR-5

**EXHIBIT "C"**

**Parallel Construction LTD.**
**Yearly Statement 2010-2011**

| Tenants | Units | Monthly Rent | Annual Rent | September | Oct | Nov | Dec | January | Feb | March | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Louisa Adames | Basement | 600 | 7,200.00 | | | | | | | | | | | | |
| M, Hulse | 1E | 1,300.00 | 15,600.00 | | | | | | | | | | | | |
| Samassa | 1W | 1,200.00 | 14,400.00 | | | | | | | | | | | | |
| Andres B. | 2E | 1,350.00 | 16,200.00 | | | | | | | | | | | | |
| Management | 2W | 0.00 | 0.00 | | | | | | | | | | | | |
| Josette Ratti | 3E | 1,200.00 | 14,400.00 | | | | | | | | | | | | |
| Johnston | 3W | 450.00 | 5,400.00 | | | | | | | | | | | | |
| Carol Villaran | 4E | 1,200.00 | 14,400.00 | | | | | | | | | | | | |
| Nelson Villaran | 4W | 1,200.00 | 14,400.00 | | | | | | | | | | | | |
| | Monthly Total | **8,500.00** | | | | | | | | | | | | | |
| | Yearly Total | | **102,000.00** | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Insurance | Prepaid 12 month | 300 | 3,600.00 | Paid | | aid | | Paid | | Paid | | | Aug 12th 2011 Paic | | |
| Repayment of Loan | Loan repayment | 4,000.00 | 48,000.00 | Repayment of loan starts Jan 1st,2011 | | | | 4,000.00 | 4,000.00 | 4,000.00 | | | | | |
| Cleanup & repairs | | 200 | 2,400.00 | | | | | | | | | | | | |
| Property Taxes | | 1,416.00 | 16,992.00 | | | | | | | | | | | | |
| Water | | 500 | 6,000.00 | | | | | | | | | | | | |
| PSE&G | | 600.00 | 7,200.00 | | | | | | | | | | | | |
| Management Fee | | 800 | 9,600.00 | | | | | | | | | | | | |
| Misc. Expenses | | 184.00 | 2,208.00 | | | | | | | | | | | | |
| | Total | **8,000.00** | **96,000.00** | | | | | | | | | | | | |